IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

FILED
2020 AUG 12 PM 3:11
CLERK
U.S. DISTRICT COURT

| | |
|---|---|
| In re: | ) |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
|      Plaintiff, | ) |
| | ) |
| vs. | )  Case No. |
| | )  2:20-CR-00182 |
| CHRISTOPHER ISIDRO ROJAS, | ) |
| | ) |
|      Defendant. | ) |
| | ) |
| _____ | ) |


BEFORE THE HONORABLE JARED C. BENNETT

August 4, 2020


Transcript of Electronically Recorded Hearing

1

**Appearances of Counsel:**

For the Plaintiff:     J. Drew Yeates
                            Bryan Reeves
                            Michael Thorpe
                            Attorneys at Law
                            US Attorney's Office (UT)
                            185 South State Street
                            Suite 300
                            Salt Lake City, Utah 84101

For the Defendant:     Frank A. Berardi
                            Attorney at Law
                            Frank A. Berardi, PC
                            3378 South 275 East
                            Salt Lake City, Utah 84115

Court Reporter:

Laura W. Robinson, RPR, FCRR, CSR, CP
351 South West Temple
8.430 U.S. Courthouse
Salt Lake City, Utah 84101
(801)328-4800

**Salt Lake City, Utah, August 4, 2020**

**\* \* \* \* \***

3          THE COURT:  This is a reminder.  This is

4     federal court still, and so if -- the rules against

5     recording are still in effect and so we ask all of

6     you please not to record this proceeding.  The

7     official record will be kept here in federal court

8     which I will be keeping here as we go.

9          Let's go on the record in the case of the

10    *United States of America versus Christopher Isidro*

11    *Rojas*.  This is case 2:20-CR-182.  This is on a

12    Superseding Indictment on one count under 18 USC

13    844(i), Arson in Interstate Commerce.

14          Before we get started, could I please have

15    counsel state their appearances for the record and

16    let's begin with the United States.

17          MR. YEATES:  Your Honor, Drew Yeates on

18    behalf of the United States.  I'm also here with AUSA

19    Reeves and Thorpe.

20          THE COURT:  Thank you.

21          MR. BERARDI:  Frank Berardi, Your Honor, for

22    Mr. Rojas.

23          THE COURT:  Thank you very much.  I will

24    note there are also numerous other people who are

25    observing this proceeding, and we do not need to

```
 1    identify them at this time.

 2            Let's first proceed with this current COVID

 3    situation we have.  Mr. Rojas you, of course, have

 4    the right to an in-person appearance for purposes of

 5    this initial appearance and arraignment today.

 6            Unfortunately, because of the pandemic, the

 7    Court is closed at least until September.  We'll see

 8    if that date holds.  Do you waive your right to an

 9    in-person appearance and choose instead to proceed by

10    way of video teleconference today?

11            THE DEFENDANT:  I am okay with proceeding

12    with the video conference.

13            THE COURT:  Thank you.  I will accept that

14    as a knowing and voluntary --

15            THE DEFENDANT:  And the safety of everybody.

16    I understand what's going on right now and would like

17    to obviously take the safest route for sure.

18            THE COURT:  Thank you.  And I very much

19    appreciate your accommodation and we'll find that it

20    is a knowing and voluntary waiver of your right to

21    in-person appearance and we will proceed today by way

22    of video teleconference.

23            Before we get going, I want to inform you

24    Mr. Rojas of two very important rights that you have

25    under the United States Constitution.  The first is
```

1    under the Fifth Amendment you have a right to remain

2    silent.  And I would encourage you not to say

3    anything without first discussing with your lawyer.

4    Because if you do say things, they may be used

5    against you in a subsequent proceeding.

6              Now your second important right is that of

7    having an attorney present to assist you at all

8    stages of this proceeding.  That is your right under

9    the Sixth Amendment.

10             My understanding is that you have retained

11   Mr. Berardi to represent you.  Is that correct?

12             THE DEFENDANT:  That is correct.

13             THE COURT:  Thank you.

14             Mr. Berardi, just by way of note, um, I

15   understand that, I just want to make sure that you

16   understand, that in the event that Mr. Rojas would be

17   unable to pay you in the future, there is at least a

18   possibility that you may be asked to take this case

19   pro bono.  Do you understand that?

20             MR. BERARDI:  I understand that, Your Honor.

21             THE COURT:  Thank you.  So we're here on the

22   Indictment which is alleging one count.  Have you had

23   a chance, Mr. Berardi, to review this one count

24   Indictment with your client?

25             MR. BERARDI:  Not with my client, Your

```
 1    Honor, no.  I reviewed it just today and last -- well
 2    and yesterday when I received it.
 3              THE COURT:  Would you like a few minutes to
 4    meet with Mr. Rojas to go over that Indictment before
 5    we get started?
 6              MR. BERARDI:  Yes, that would be nice, Your
 7    Honor.
 8              THE COURT:  About how much time would you
 9    need?
10              MR. BERARDI:  I would say ten minutes.
11              THE COURT:  Ten minutes.  What I'm going to
12    do, Mr. Rojas, is I am going to put you and
13    Mr. Berardi in a breakout room here on Zoom.  No one
14    else can get into it, it will just be the two of you,
15    I don't get into it.  I'm going to set the clock for
16    ten minutes so everyone who is observing these
17    proceeding will know what time we'll reconvene.  I'll
18    give you a one minute warning when they close the
19    breakout room and then you will be merged back into
20    our conversation here.  Does that sound acceptable?
21              MR. BERARDI:  Yes, Your Honor.  Thank you.
22              THE DEFENDANT:  Yes, Your Honor.  Thank you.
23              THE COURT:  Okay.  Let me do that.
24              MR. BERARDI:  Can you hear me, Chris?
25              THE COURT:  We're not there yet.  Hold on
```

```
1    just a second.

2              THE DEFENDANT:  I can still see everybody.

3              THE COURT:  All right.  Here we go.  I'm

4    going to send you, you'll have to press a button.

5              THE DEFENDANT:  Thank you, Your Honor.

6              THE COURT:  You bet.

7              (Brief pause in proceedings.)

8              MR. BERARDI:  Your Honor?

9              THE COURT:  Let me see here.  It looks like

10   you're back a little bit early.

11             MR. BERARDI:  Yes, Your Honor.

12             THE COURT:  Okay.  Perfect we will proceed

13   accordingly.  So we'll go back on the record.  And

14   now that you have had a chance to speak with

15   Mr. Rojas, just do a video here, there we go, that's

16   better.  Now that you have had a chance to speak with

17   Mr. Rojas, let's go over the Indictment.  Do you

18   desire, first of all, Mr. Berardi, do you desire a

19   formal reading of the Indictment?

20             MR. BERARDI:  No, Your Honor.  We have gone

21   over it.  We'll waive the reading.

22             THE COURT:  Mr. Yeates, what is the maximum

23   penalty for Count 1 of the Indictment?

24             MR. YEATES:  Your Honor, the maximum

25   possible penalty is 20 years in prison and a fine of
```

1    $250,000.  If convicted, there is a minimum mandatory

2    period of incarceration of five years.

3              THE COURT:  Thank you.

4              Mr. Rojas, as to Count 1 in the Superseding

5    Indictment, how do you plead, guilty or not guilty?

6              THE DEFENDANT:  I would plead not guilty.

7              THE COURT:  Thank you.  I will accept your

8    not guilty plea.

9              Mr. Yeates, what is the outside date in this

10   case?

11             MR. YEATES:  Your Honor, the outside date is

12   October 13th.  However, another co-defendant has

13   appeared previously and a trial has been scheduled

14   before the assigned district court judge for the 2nd

15   day of October.  And we would ask the Court to

16   schedule the same deadlines.

17             MR. BERARDI:  Did you say October 2nd?

18             THE COURT:  Mr. Berardi, do you have any

19   objection to the same deadlines applying in the, as

20   to the other co-defendants, applying to your client?

21             MR. BERARDI:  Your Honor, I don't think so.

22   I didn't hear the last date.  Did we say the trial in

23   the other case was set for October 2nd?

24             THE COURT:  Mr. Yeates?

25             MR. YEATES:  That's right.

1          MR. BERARDI:  Okay.  That's fine, Your
 2     Honor.
 3          THE COURT:  So the motion cut offs, the plea
 4     cut offs, all of the other deadlines that are already
 5     set in this case will then therefore apply to
 6     Mr. Rojas as well.  And, of course, to the extent
 7     there needs to be a motion, a Speedy Trial Act to
 8     extend the time for who knows what reasons, we're in
 9     2020 so who knows what is going to happen, of course
10     the Court will take those under advisement.
11          And Mr. Yeates, what is the United States'
12     position on detention?
13          MR. YEATES:  Your Honor, we are seeking
14     detention in this case.
15          THE COURT:  Mr. Berardi, is the Defendant
16     contesting detention in this matter?
17          MR. BERARDI:  He is, Your Honor.  Um, I just
18     -- I read the Presentence Report or Pretrial Report.
19     You know, there is four, I think, four contentions
20     that they're concerned for his nonappearance.
21          THE COURT:  Well Mr. Berardi, I don't mean
22     to cut you off, but before we go there what I plan on
23     doing is having the United States go first because
24     they bear the burden, well at least there is a
25     presumption here, but have them go first and then I

1  will have you articulate why your client overcomes

2  the presumption of detention here, and then we'll go

3  from there.

4          So Mr. Yeates, are you going to be making

5  the argument on behalf of the United States?

6          MR. YEATES:  I am, Your Honor.

7          THE COURT:  Please proceed.

8          MR. YEATES:  Your Honor, to begin, I filed a

9  memorandum related to detention and that is

10  Document 59.  I hope that Your Honor has had an

11  opportunity to view that.  I also hope that

12  Mr. Berardi has had an opportunity to see it.

13          But in summary, Your Honor, the United

14  States seeks detention pursuant to section 3142(f).

15  And the basis for that is really twofold.  One, he is

16  charged with a crime of violence.  Um, also, Your

17  Honor, he is charged with an offense listed under

18  section 2332b(g)5(B).  And as a third potential

19  reason for detention, Your Honor, we believe that he

20  presents a serious risk of flight.

21          With that said, Your Honor, it is the

22  position of the United States that in this case a

23  presumption of detention applies.  I would mention,

24  Your Honor, that co-defendants who have already

25  appeared before another magistrate judge as well as

1   the District Court Judge, the judges have all found

2   that indeed there is a presumption of detention.  But

3   for the benefit of the record, I will indicate that

4   the presumption of detention applies because the

5   offense is one listed under 18 United States Code

6   Section 2332b subsection (g)5(B).

7           And with that presumption, Your Honor, I

8   would indicate to the Court that as Your Honor well

9   knows, the courts have looked at this presumption of

10  detention, they have found it is not a bursting

11  bubble, meaning that even if the defense is to

12  proffer evidence that might rebut that presumption,

13  the fact that congress has found that a certain type

14  of individual presents a nonmanageable risk of flight

15  and a nonmanageable danger to the community should

16  continue to be considered by the Court.

17          Now, Your Honor, if the Court would like me

18  to go into my full argument, I'm prepared to do that

19  as well.

20          THE COURT:  Yes, please.  I mean I

21  understand this is a presumption case given the

22  charge bend pending in Count 1 of the Indictment, so

23  please go ahead and let me know what the argument is

24  on behalf of the United States on behalf of

25  detention.

MR. YEATES: Your Honor, looking at the
Pretrial Services Report there are a few things that
stick out. One is that the Defendant didn't appear
to be completely candid in his discussions with
Pretrial Services. In fact, there appear to be a
number of facts where he and his mother disagree. I
think that the Court should be concerned about that.

The other thing that is clear in the report
is that Mr. Rojas has an issue, a problem with
substance abuse, namely with alcohol, and I will
discuss that a little more in a moment. But it also
appears that he has frequently used THC or marijuana
products although he indicates that he has used those
products when he is in states where it's legal.

Your Honor, I would like to pull up a
document to help guide the remainder of my argument,
but I will be showing, with the Court's permission, a
number of photographs and a short video related to
the Defendant and the allegations. But I have
covered now, Your Honor, the presumption of
detention. I also want to discuss briefly four
different sections related to the detention statute
here under 3142.

First, Your Honor, I would like to discuss
the nature and circumstances of the offense. And as

1    the Court may well know from looking through the

2    documents in this case, this case is a result of a

3    riot that took place in Salt Lake City.

4           Now the United States will concede that

5    prior to the riot there was a demonstration.  And it

6    was for a time a lawful demonstration.

7    Unfortunately, a number of individuals decided to

8    begin causing damage to public facilities, to private

9    businesses, and in this case to a Salt Lake City

10   patrol car.

11          Indeed, the patrol car was overturned and

12   the Defendant in this case, Mr. Rojas, helped in the

13   destruction of that vehicle.  He started by ripping

14   pieces off the patrol car.  And then, Your Honor, he

15   participated in burning that car and it was

16   completely destroyed.

17          When I look under Section 3142(g), I believe

18   that the Court should easily find that the factors

19   weigh heavily in favor of detention as to the nature

20   and circumstances of the offense.

21          Turning to sub paragraph (g)(2), the weight

22   of the evidence, it is at this time, Your Honor, that

23   I would ask for the ability to have my co-counsel Mr.

24   Reeves show eight separate exhibits.  May he, Your

25   Honor, take control and then show these exhibits?

1          THE COURT:  Yes.  I believe he should have

2     the ability to share his screen.

3          MR. REEVES:  Thank you, Your Honor.  One

4     moment.

5          MR. YEATES:  Mr. Reeves, if we can just

6     start with Exhibit 1.

7          MR. REEVES:  Your Honor, can you hear me?

8          THE COURT:  Yes.

9          MR. REEVES:  Let's try that again.  Here we

10    go.

11         MR. YEATES:  Your Honor, Exhibit 1 is a

12    screen capture of a video at the riot which depicts

13    Mr. Rojas ripping a bumper off of the police car.

14         As you can see from the photograph, it shows

15    the play feature and that's because this was taken

16    from a video.  But you'll see on the left-hand side

17    an individual wearing a red and black long-sleeve

18    shirts, khaki pants, and what appear to be Van shoes.

19    That is Mr. Rojas.  And you can see there as he is

20    pulling back ripping the bumper off of the Salt Lake

21    City patrol car.

22         Mr. Reeves, if you can please show

23    Government's Exhibit 2.

24         MR. REEVES:  Can that be seen by all?

25         THE COURT:  Yes.

1    MR. YEATES:  It can.  Your Honor, this is a
2    similar photograph.  It shows Mr. Rojas again ripping
3    a part of the patrol car off after the car had been
4    overturned.
5         Mr. Reeves, Exhibit 3, please.  Now, Your
6    Honor, to give the Court an understanding of this
7    photograph, to the left of where these two
8    individuals are standing, is the overturned patrol
9    car.  And the individual wearing what appears to be a
10   white medical mask is Mr. Rojas.  To the right, is an
11   unidentified co-conspirator.  And what they are
12   holding is a white fabric of some sort.  It might be
13   a tablecloth or a bed sheet, but it is a white cloth
14   fabric.  And you will see in Mr. Rojas's hand what
15   appears to be a Bic lighter.  And you will see that
16   with his left hand he is manipulating the fabric, and
17   with the right hand he is lighting it aflame.
18        Mr. Reeves, could we have Exhibit 4, please.
19        MR. REEVES:  Can that be seen by all?
20        THE COURT:  Yes.
21        MR. YEATES:  Your Honor, what you will see
22   here is the unidentified co-conspirator wearing a gas
23   mask, he is still holding the fabric which is now
24   beginning to burn.  And you will see Mr. Rojas's hand
25   as he points at the flame.  The two of them are

1    facing the patrol car.  And although it's difficult

2    to make out the conversation they're having, the

3    intent of the two was to throw this toward the patrol

4    car into the interior of the patrol car that already

5    had windows broken out in order to light the patrol

6    car aflame.

7            Mr. Reeves, Exhibit 4 -- or excuse me,

8    Exhibit 5, please.

9            In this photograph, Your Honor, you will see

10   Mr. Rojas on the left-hand side of his

11   co-conspirator, the co-conspirator with his right

12   hand tosses the burning fabric and it is headed

13   towards the patrol car.

14           I'll proffer, Your Honor, that it indeed

15   falls within the interior of the patrol car and

16   begins to burn.  Another co-defendant then pours on

17   an accelerant and it lights the entire patrol car

18   aflame.

19           Mr. Reeves, could we have Exhibit 6, please.

20   Your Honor, at the protest turned riot, there were

21   many, many, videos, and photographs.  And this is one

22   of Mr. Rojas who appears to be showing off, posing

23   for a photograph.  And in his left hand you see the

24   lighter that he used to light the fabric on fire.

25           And then if we could move to Government

1   Exhibit 7, please, Mr. Reeves.  This is a video, Your

2   Honor, and I believe there is audio.

3           (Whereupon, Exhibit 7 was played

4            for the record.)

5           MR. REEVES:  Can the audio be heard by all.

6           MR. YEATES:  Your Honor, the individual

7   depicted in the video indicates that he put the car

8   on fire.

9           And then, Your Honor, if I could have

10  Government Exhibit 8.  After the car is fully aflame,

11  you will see in the background Mr. Rojas wearing the

12  same clothing.  He has on a long-sleeve red and black

13  shirt, a gray undershirt, his khaki pants.  He is

14  still wearing his white medical style mask and he

15  appears to be celebrating.  In the video, Your Honor,

16  he walks from one side of the street to another, that

17  is Fourth South across the street from the library

18  and he is celebrating the burning of the patrol car.

19          Mr. Reeves, thank you for showing those

20  exhibits.

21          Your Honor, based on that, the weight of the

22  evidence and the nature and circumstances of the

23  offense, the Government would ask the Court to find

24  that those both weigh heavily in favor of detention.

25  But there is one -- at least one other area we have

1  to discuss and that is the Defendant's history and

2  characteristics pursuant to 3142(g)(3)(A) and there

3  is some material in the Pretrial Services Report that

4  I will cover, but there is also some material that

5  was left out of the report that the Court should be

6  aware of.

7  So first, Your Honor, I mentioned the lack

8  of candor with pretrial.  The fact that he made

9  statements that differed with those of his mother.

10  The second is that clearly the defendant has a

11  history of abusing alcohol.  Third, Your Honor, it

12  appears that he has been under employed for a number

13  of months and that under employment will continue.

14  He is currently charged with a DUI offense

15  and is facing that offense in state or perhaps

16  municipal court.  Also, Your Honor, the report

17  indicates that Mr. Rojas has failed to appear six

18  times which is a pattern of failures to appear.  In

19  addition, he has failed to comply with court orders

20  and has a pattern of doing so.

21  There are four cases that aren't mentioned

22  in the Pretrial Services Report that are relevant to

23  the Court's determination here.  In court case

24  155004879, in Logan Justice Court, the Defendant was

25  charged with a minor offense, stop light violation.

However, he failed to appear on the citation.  He was charged with that failure to appear and he was convicted of the same.  That took place, Your Honor, in 2016.

Next, in Logan, in case 165004135, the Defendant was charged with two minor violations.  A speeding and a driving on a denied license.  However, he exacerbated the situation by failing to appear on the citation and again in that case he was found guilty of the same.  That also took place, Your Honor, in 2016.

The third case I would bring to the Court's attention is a traffic offense involving failure to register or expired tags, speeding, and driving on a denied license.  Again, showing a habit, Your Honor, of violating the mandate of the Driver's License Division, he was driving on a suspended or denied driver's license.

And then the last case in Utah that I will bring to the Court's attention is a 2019-case where he was charged with driving without proof of insurance, as well as driving on a suspended or revoked license.  He was later convicted of the driving on suspended or revoked license.  Again, Your Honor, thumbing his nose at the Driver's License

1    Division.

2              Your Honor, when I look at his history of

3    failures to appear and failures to comply, and his

4    repeated insistence on driving on suspended or denied

5    driver's license, what I see is a clear pattern that

6    the Defendant is not going to follow court orders nor

7    is he going to abide by the restrictions placed upon

8    his driver's license.

9              Finally, Your Honor, before I end, I will

10   indicate that the Court should find the nature and

11   seriousness and danger of the community that the

12   Defendant created when he lit a patrol car on fire in

13   a major city thoroughfare.

14             Your Honor, he placed every one there in

15   danger.  Himself, protestors, rioters, police

16   officers, media, and casual observers.  All of them

17   could have been harmed by the patrol car which,

18   loaded with ammunition, had bullets exploding due to

19   the fire.

20             Based on this, Your Honor, the United States

21   would ask the Court to find both that Mr. Rojas

22   presents an unmanageable danger to the community and

23   also an unmanageable risk of nonappearance and we

24   would ask that he be detained pending trial.

25             THE COURT:  Thank you, Mr. Yeates.

```
 1            Mr. Berardi?

 2            MR. BERARDI:  Your Honor, well, to begin

 3      with I think this is actually one of the most easily

 4      manageable cases.  Looking at these -- looking at

 5      these pictures in this video that Mr. Yeates has

 6      shown us, his contentions, if I recall them, is one

 7      he says that there is discrepancies between Mr. Rojas

 8      and what his mother stated.  There may very well be.

 9      But the person who knows the facts the best is

10      Mr. Rojas.  I haven't heard anything that says

11      anything he stated wasn't true.  Everything that he

12      did state that he told the interviewer was correct.

13            I notice that the report -- in the report,

14      if I can just pull it up here a second, um, states

15      that the four reasons of contention is one of them is

16      that he has ties to a foreign country.  I don't know

17      where that information comes from.  I mean there is

18      nothing in the report that says that.  I mean he is

19      born in California and he lives here now.  He has

20      lived here now for the last 12 years.  His whole

21      family lives here.  His mother lives here, his father

22      lives here, his brothers live here.  I don't see -- I

23      don't know how they drew this conclusion for a

24      foreign country.  I'm assuming they're saying it is

25      Mexico, but I don't see any -- any link whatsoever.
```

1   I don't see anything that shows that he is a flight

2   risk.  He has got no place to go.  All his ties are

3   here.

4            His failure to appear history, as Mr. Yeates

5   pointed out, they all go back to 2016 in a situation

6   where he had moved, he didn't even know about the

7   tickets until after the fact.  When he found out

8   about them, he took care of them all, he paid all of

9   the fines off and he paid everything off.  The

10  driving on suspension comes from the fact that after

11  he had paid everything, he still owed a reinstatement

12  fee which nobody told him about.  And so while he

13  presumed his license was valid then, he still needed

14  to pay $65.00 to get his license reinstated.  That's

15  -- that's where that charge comes from.

16           Looking at his history which is minimal, I

17  don't see anything that says he is a risk to the

18  community or he certainly is not a flight risk.  I

19  mean it seems like he has a GPS monitor on him, um,

20  boom, he is easily controlled and monitored.

21           I don't -- I don't see what the issue would

22  be there.  Let me -- oh, and one of the pictures, I

23  hadn't had a chance to see those before where the car

24  is on fire, is that the police car or is that a

25  different car?  I couldn't tell.  I thought it was a

1    different vehicle.

2          THE COURT:  There are two different

3    vehicles.  One is the police car and another is

4    another car that was burned apparently near he was

5    standing by.

6          MR. BERARDI:  Okay.  So all right.  That's

7    what I noticed.  Like I said, those are my arguments

8    and I don't see anything that was untruthful in

9    anything he stated to the interviewer.  I couldn't be

10   there because he couldn't three-way the call through

11   the jail or something.  So...

12         THE COURT:  Very well.  So I'm prepared to

13   make my ruling.  Under 18 USC 3142, I have to make

14   two determinations and I have to base those

15   determinations on a series of factors.

16         One of the things that I don't decide is

17   guilt or innocence.  That has nothing to do with me

18   at this point in time.  What I have to decide is

19   whether Mr. Rojas is an unmanageable risk of failure

20   to not -- to appear; and second, whether he is a

21   danger to the community.  Danger to the community

22   doesn't necessarily mean violent acts toward someone

23   or somebody, but rather it simply means the ability

24   -- that he is likely to commit other crimes in

25   addition to the potential violent acts.

The factors that I have to consider is I have to consider number one there is a presumption of detention in this case because the charge that he is now facing carries with it, by congress's mandate, a presumption of detention. We accept that he is presumed detained and basically he needs to rebut that presumption, but the Government, the United States, bears the burden of proof throughout the proceeding.

Number two, I have to consider the nature and circumstances of the offense charged. This is a very serious offense. Lighting a car on fire in plain daylight is a very serious offense. And so that's -- that is certainly something that weights in favor of detention.

The nature -- the weight of the evidence. That is at least the Ninth Circuit has indicated the least important factor that I have to consider, but I would suggest the weight of the evidence here is certainly strong, the fact that there is photographic and video evidence of this taking place.

At the same time we have to consider the history and characteristics of the person to determine whether he is indeed unmanageable. Although the Court does have some concern with these

1  failures to not appear, they appear to have an

2  explanation.  Moreover, I do not see kind of the

3  history of repeated criminal behavior and drug use

4  and other things that we see in other cases that

5  typically warrant some type of detention to say that

6  an individual is unmanageable either because he or

7  she is danger to the community or because he or she

8  is a risk of flight.

9           The failures to not appear while certainly

10  concerning to me and I hope it would be perfectly

11  clear this is not traffic court in Logan.  This is

12  federal court.

13           MR. BERARDI:  Correct.

14           THE COURT:  If there is a failure to appear,

15  there are consequences for that.

16           THE DEFENDANT:  I understand.

17           THE COURT:  Sorry, I'm not quite there

18  Mr. Rojas, but I'm doing my ruling.  We'll hear from

19  you at the right time if your attorney thinks it is a

20  good idea.

21           Because of the person's character,

22  relationships to others in the community, that's one

23  thing I have to consider in addition to whether he is

24  already under supervision which appears that he

25  isn't.  And does he pose any particular danger to any

```
 1   one person or to a segment of the community.  And I

 2   just don't see any evidence that he does.

 3           So what I'm going to do, is I am not going

 4   to order the Defendant detained.  However, I'm going

 5   to put him on a number of conditions, the violation

 6   of which will indeed bring a revisiting of this under

 7   Section 3148.  And if he is unable to abide by those

 8   conditions, then detention is certainly going to be a

 9   valid option.

10           So these are the conditions that I'm going

11   to impose.  Number one, the Defendant needs to

12   maintain or actively seek verifiable employment.  The

13   work as you go as the audio engineer stuff comes up

14   that is not going to cut it.  You need to be out

15   looking for a job or getting an education in some

16   sort of an educational program that is approved by a

17   pretrial officer.

18           Number two, I would expect you to abide by

19   conditions in terms of the following.  Number one,

20   maintain a residence.  You do not change that

21   residence without permission from the pretrial

22   officer.  Number two, you do not travel outside of

23   the State of Utah without permission from the

24   pretrial officer.  And there will be no travel

25   outside of the United States period.  If you have a
```

passport, I would ask you to turn that in to the
pretrial services officer immediately.  If you don't
have a passport, then I would order you not to apply
for one.  I'm ordering you to avoid all contact with
others that are named in this case, who are
considered to be alleged victims or potential
witnesses, and co-defendants.  In fact, one of the
things that the law requires me to warn you of on
conditions of release, is if there is any association
in terms of trying to obstruct justice, obstruct the
criminal investigation, intimidate witnesses, that is
one of the offenses that would be an additional
offense to the one with which you are charged.  The
law requires me to advise you of that fact.  You are
not to use alcohol period, nor frequent any
establishment where alcohol is the main item of
order.

You are not to possess any narcotic drug
regardless of whether it is legal in some other
state.  If it is under the federal controlled
substances laws, it is -- it is on those schedules,
it is forbidden under federal law you are not to
possess it and not to use it.

You are to submit to drug and alcohol
testing as directed by the pretrial services officer.

And I am going to order you to pay at least a part of
that or all of it depending on your current financial
circumstances.

You will also submit your person, residence,
and your vehicle to searches that will be conducted
by the pretrial officer at a reasonable time, in a
reasonable manner, based on reasonable suspicion of
contraband or evidence of a violation or condition of
release.  Failure to submit to that may result in
revocation of these conditions.

And, of course, you are to abide by all
state court hearings which now may be pending and the
conditions imposed by those state courts.  Failure to
not appear in a state court proceeding to me amounts
to a violation of the conditions that I am now
imposing which would be problematic and something I
am certain you don't want to deal with.

Those -- that is my order in terms of
Mr. Rojas's release.  Are there any questions about
the extent of my order?  I understand that there may
be disagreement with it, but does anyone have any
questions as to what was ordered?

MR. YEATES:  Not the United States.

THE COURT:  Mr. Berardi, any questions?  If
you're talking you're probably on mute.

1      MR. BERARDI:  No, Your Honor.  No questions

2  on that.  I did have one question as far as the

3  deadlines for the case.  Does the Court know what

4  that deadline was for motions?

5      THE COURT:  Mr. Yeates, do you happen to

6  have that?  I do not have those deadlines in front of

7  me.

8      MR. YEATES:  Your Honor, I can probably find

9  it quickly but it would probably be easier for

10  Mr. Berardi to simply go to the hearing with

11  Mr. Patton that has all of the --

12      MR. BERARDI:  That's fine, Your Honor.  I

13  just thought if the Court knew it I was just asking.

14  No problem.

15      THE COURT:  What we'll do there is when we

16  issue our minute entry order for this hearing, we can

17  find those deadlines and put them in there.  Just we

18  all have agreed we're going to abide by them, so

19  we'll put them in there so you can put them on your

20  calendar.

21      In addition to those conditions, I do have

22  by law to warn you not to violate Section 1503, 1510,

23  1512, or 1513 of the United States Code which as I

24  mentioned before deals with being charged with

25  intimidation for retaliation against witnesses,

1    jurors, or court officers, or obstruction of a

2    criminal investigation.  And under 18 USC 3147, there

3    is an enhanced penalty of up to ten years in prison

4    for crimes that are committed while on pretrial

5    release.

6              So with those warnings, which will be coming

7    out in our conditions of release as well, I order

8    that the Defendant is to be released pending those

9    conditions and this Court will be in recess.

10             MR. YEATES:  Your Honor, may I bring up one

11   issue?

12             THE COURT:  Certainly.

13             MR. YEATES:  Your Honor, the issue as to

14   discovery.  First, I would ask whether Mr. Berardi is

15   going to move for discovery pursuant to Rule 16.

16             MR. BERARDI:  Your Honor, I have those -- I

17   have that and my appearance ready to be filed.  There

18   was a problem with my password last night and I spoke

19   with the clerk today.  They said they would have that

20   resolved by tomorrow so I will formally file those

21   tomorrow.

22             THE COURT:  Thank you, Mr. Berardi.  Thank

23   you, Mr. Yeates.  How long would you need to produce

24   discovery or has it already been produced to the

25   other co-defendants?

MR. YEATES:  It has not been produced.

We're scheduled to produce the first notice of

compliance on the 10th of this month, so six days

from now.  I want to inform the Court that we have

many, many terabytes of video.  And we understand the

first production will be approximately three

terabytes of information and there will be additional

terabytes to follow.

         But we would ask, one, that Mr. Berardi make

a formal oral motion for discovery here.  And two,

that he supply at least a three terabyte hard drive

to the U.S. Attorney's Office so that we can upload

the first notice of compliance production.

         THE COURT:  Mr. Berardi, do you make a

motion for discovery?

         MR. BERARDI:  I do, Your Honor.  I move for

discovery and I will provide a three terabyte drive.

Do you want me to just drop that off at your office?

         MR. YEATES:  That would be ideal,

Mr. Berardi.  Thank you.

         MR. BERARDI:  Okay.

         THE COURT:  Thank you both for your

cooperation in that regard.  Is there anything else

we need to discuss at today's hearing?

         MR. KING:  Your Honor, if I may?

1          THE COURT:  Yes, Mr. King.

2          MR. KING:  I -- I apologize if I didn't hear

3     it, but I am not sure that you ordered the no

4     weapons, no firearms condition.

5          THE COURT:  If I omitted that that was

6     unintentional.  But yes, there is to be no possession

7     of firearms, ammunition, or destructive device or

8     dangerous weapon.

9          MR. KING:  Okay.  And one other thing, you

10    did talk about his employment.  I should mention that

11    he does do sound engineering at some bars which would

12    fall under the condition of not going anywhere where

13    alcohol is the main -- the chief item.

14         THE DEFENDANT:  That is my only income, just

15    so you know.

16         MR. KING:  The chief item of order.  Um, is

17    it the Court's intention to not allow him to go to

18    those places or to allow him to go to those places

19    under the being employed only for employment.

20         THE COURT:  So two questions there, I

21    appreciate the clarification.  The first is the

22    following.  The current what I understand the sound

23    engineer job is few and far between especially right

24    now with COVID.  That's a problem for the Court and

25    so I think Mr. Rojas needs to go out and find a

1   different job that is going to keep him employed

2   gainfully every single day.

3          MR. KING:  Sure.

4          THE COURT:  Part two is if he decides to do

5   that on a part-time basis kind of a gig by gig basis

6   so to speak, then the Court would allow him to be in

7   those places for purposes of employment.  However, if

8   he decides to imbibe in the products, in the

9   alcoholic products that are there, that would be

10  deemed a violation of his conditions.

11         So number one, so just to be clear, he needs

12  to find a job that is going too be occupying his time

13  daily.  If he decides to do this on a case-by-case

14  basis he may.  And if it requires him to go into an

15  establishment where alcohol is the main -- at least

16  the main service item, then he is -- he can go in

17  there for employment purposes only but he is not to

18  engage in partaking of that substance or that will be

19  a violation of his conditions.

20         MR. KING:  Thank you for the clarification,

21  Your Honor.

22         THE COURT:  Thank you for raising that.  We

23  need to make sure it is clear for everyone's

24  understanding.  We don't want misunderstandings.  The

25  stakes are too high.

1          THE DEFENDANT:  I understand.

2          THE COURT:  Any questions?

3          THE DEFENDANT:  No, Your Honor.

4          MR. BERARDI:  Could I just talk to Mr. Rojas

5     just briefly?  I don't care if -- I don't need a

6     separate room or nothing.  Just --

7          THE COURT:  Well, let's just put you in a

8     separate room.  We can dismiss everyone.  I will -- I

9     can just do that right now and then when you're done

10    the Zoom call will be over.  So I'll just put you two

11    in a breakout room and we will adjourn this hearing.

12         THE DEFENDANT:  Thank you, Your Honor.

13         MR. BERARDI:  Thank you.

14         (Whereupon, the hearing concluded.)

15

16

17

18

19

20

21

22

23

24

25

1          **REPORTER'S CERTIFICATION**

2

3              I hereby certify that the foregoing

4     transcript was taken from a tape recording

5     stenographically to the best of my ability to hear

6     and understand said tape recording, that my said

7     stenographic notes were thereafter transcribed into

8     typewriting at my direction.

9              Dated this 10th day of August, 2020.

10

11

12                    _____

13                    Laura W. Robinson

14

15

16

17

18

19

20

21

22

23

24

25